1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARILYN SCOTT ALVERNAZ, | ) Case No.: 1:16-cv-01929 - JLT |
| Plaintiff, | ) ORDER DIRECTING ENTRY OF JUDGMENT IN ) FAVOR OF DEFENDANT, NANCY A. |
| v. | ) BERRYHILL, ACTING COMMISSIONER OF ) SOCIAL SECURITY, AND AGAINST |
| NANCY A. BERRYHILL[1], Acting Commissioner of Social Security, | ) PLAINTIFF MARILYN SCOTT ALVERNAZ ) ) |
| Defendant. | ) ) |

Marilyn Scott Alvernaz asserts she is entitled to a period of disability, disability insurance benefits, and disabled widow's benefits under Title II of the Social Security Act. Plaintiff seeks judicial review of the decision denying her applications for benefits, asserting the administrative law judge erred in evaluating the medical record. Because the ALJ applied the proper legal standards and the decision is supported by substantial evidence in the record, the administrative decision is **AFFIRMED**.

## **BACKGROUND**

Plaintiff filed applications for benefits on May 6, 2013, in which she alleged disability beginning September 27, 2007. (Doc. 10-3 at 19) The Social Security Administration denied the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Nancy A. Berryhill for her predecessor, Carolyn W. Colvin, as the defendant in this action.

applications at the initial level and upon reconsideration. (*Id.*; Doc. 10-5 at 6) Plaintiff requested a hearing and testified before an ALJ on May 27, 2015. (Doc. 10-3 at 19, 41) At that time, she amended her disability onset date to May 29, 2011. (*Id.* at 19) The ALJ determined Plaintiff was not disabled under the Social Security Act and issued an order denying benefits on June 26, 2015. (*Id.* at 19-34) Plaintiff filed a request for review of the decision with the Appeals Council, which denied the request on October 25, 2016. (*Id.* at 2-4) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

**STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

**DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

### A. Relevant Medical Evidence

In February 2011, Dr. Nirbhai Hundal noted Plaintiff had been diagnosed with depression and was taking Effexor. (Doc. 10-9 at 32) Plaintiff reported her mood was "much better." (*Id.*) Dr. Hundal noted Plaintiff's depression was improved and her hypertension was stable. (*Id.*) The following month, Plaintiff "complain[ed] of feeling anxious and [having] panic symptoms." (Doc. 10-9 at 31) However, Plaintiff also told Dr. Hundal that her symptoms were "much better with Effexor." (*Id.*) She continued to report that her "mood [was] much better in April 2011. (*Id.* at 30)

In September 2011, Plaintiff had a followup with Dr. Hundal. (Doc. 10-9 at 28) Plaintiff reported she had quit smoking, and her blood pressure was stable with medication. (*Id.*) Dr. Hundal noted Plaintiff denied "any dysphoric symptoms." (*Id.*) Dr. Hundal found no edema in Plaintiff's legs. (*Id.*) Further, he opined Plaintiff's hypertension and depression were stable. (*Id.*)

Plaintiff returned to Dr. Hundal for a follow-up in December 2011. (Doc. 10-9 at 27) She stated her mood had been stable, and Dr. Hundal found Plaintiff was "awake, alert, oriented to place, person, and time, and in no acute distress." (*Id.*) Dr. Hundal again opined Plaintiff's depression was stable and recommended she continue the same medications. (*Id.*)

3

On May 4, 2012, Plaintiff visited the office of Dr. Hundal and reported she was "unable to concentrate" and "unable to sleep." (Doc. 10-9 at 26, 85) She said her husband had died the prior week of liver cancer. (*Id.*) Dr. Hundal diagnosed Plaintiff with depression and increased the dose of Effexor. (*Id.*) He also prescribed Xanax for anxiety and indicated Plaintiff would "be off work from May 4 until June 4, 2012." (*Id.*)

In July 2012, Plaintiff told Dr. Hundal that her mood was "slightly better," but she "still [had] difficulty with focusing." (Doc. 10-9 at 84) In addition, she "complain[ed] of right wrist pain sometimes with activity," which "ha[d] been going on for months." (*Id.*) Dr. Hundal noted she had tenderness the right wrist. (*Id.*) He diagnosed Plaintiff with depression, anxiety, and osteoarthritis of the hand. (*Id.*)

On September 11, 2012, Plaintiff told Dr. Hundal that she was "unable to focus on work and causations." (Doc. 10-9 at 24, 83) In addition, Plaintiff said she felt "anxious at time[s]." (*Id.* at 24) Dr. Hundal found Plaintiff was "oriented to place person and time" and found "[n]o focal neurological deficit[s]." (*Id.*) He diagnosed Plaintiff with depression and noted Plaintiff was taking Xanax and Effexor. (*Id.*) Further, Dr. Hundal indicated Plaintiff would "be off work until October 31, 2012." (*Id.*)

Plaintiff underwent x-rays of her right hand and wrist on September 12, 2012. (Doc. 10-9 at 12-13) Dr. Joseph Higgins found "[n]o significant bony, soft tissue, or articular abnormality." (*Id.*)

In November 2012, Plaintiff visited Dr. Hundal after having a cyst removed from a toe. (Doc. 10-9 at 82) She reported that she was attending a hospice support group but continued to "feel[] anxious and depressed." (*Id.*) In addition, Plaintiff "complain[ed] of exacerbation of her lower back pain with bending activities" and said she had "been unable to work because of the pain." (*Id.*) According to Dr. Hundal, Plaintiff exhibited tenderness on the lumbar spine. (*Id.*) Her straight leg raise tests were negative. (*Id.*) Dr. Hundal referred Plaintiff to an orthopedic doctor and noted she would be "[o]ff work until December 31, 2012." (*Id.*)

The following month, Plaintiff said she did not go to the orthopedic physician "because of lack of insurance." (Doc. 10-9 at 81) She "continue[d] to have low back pain [and] right wrist pain." (*Id.*) Furthermore, Plaintiff said she continued to be depressed. (*Id.*) Dr. Hundal indicated she should continue with the current medication and noted Plaintiff would "be off work until February 15, 2013."

(*Id.*)

On March 13, 2013, Plaintiff's visited Dr. Hundal who found her blood pressure was 124/80. (Doc. 10-9 at 21) Plaintiff complained of lower back pain, which went into her leg, and had x-rays taken of her left hip and lumbar spine. (Doc. 10-9 at 11, 21) Dr. Michael Zeppa determined Plaintiff had "[m]ild left hip joint space narrowing, consistent with early degenerative joint disease" and a "[v]ery small smoothly contoured bony bump … on the superolateral femoral head." (*Id.* at 11, 73) In addition, Dr. Zeppa found "[m]ild multilevel spondylosis" in the lumbar spine. (*Id.*) Specifically, Plaintiff had "mild narrowing of the L4-5 disk space uniformly," "[m]inimal endplate marginal spur formation," and "[m]ild increased sclerosis … in the facet joints bilaterally at L4-5 and … on the left side at L3-4. (*Id.*) Dr. Hundal noted Plaintiff would "be off work until [M]ay 15 2013." (*Id.* at 21)

In April 2013, Plaintiff visited Dr. Hundal for a follow-up appointment, after suffering a cough. (Doc. 10-9 at 79) Plaintiff reported the pain in her back "[s]ometimes… traveled to the left leg" and caused tingling. (*Id.*) Her mood was depressed, and her sleep was decreased. (*Id.* at 79) Dr. Hundal also noted that as a subjective complaint, Plaintiff was "unable to work because of her chronic pain, depression." (*Id.*)

On May 10, 2013, Plaintiff continued to report having depression and "chronic lower back and left hip pain." (Doc. 10-9 at 78) In addition, Dr. Hundal noted:

> She stated she is unable to sit for more than one hour because of back pain. If she walks or stands for more than one hour her hip starts hurting as well. [She] does not lift more than 10 pounds at a time. [She] denies any focal weakness. Her sleep is decreased.

(*Id.*) Dr. Hundal determined Plaintiff's blood pressure was 134/80. (*Id.*) She exhibited tenderness in the lumbar spine and in the left hip with range of motion. (*Id.*) Dr. Hundal noted Plaintiff had been diagnoses included: "Lumbar spine osteoarthritis. Left hip osteoarthritis. Depression." (*Id.*) Dr. Hundal concluded, "She is unable to work [a] regular 8 hour[] job because of the above conditions." (*Id.*)

Dr. Antoinette Acenas performed a psychiatric evaluation on September 6, 2013. (Doc. 10-9 at 48) Dr. Acenas noted Plaintiff "present[ed] with depression triggered by her chronic back pain." (*Id.*) Plaintiff told Dr. Acenas she felt "frustrated that she [was] no longer able to work because of her back pain and unable to do physical activity." (*Id.*) She said she was able to take care of "her personal grooming and hygiene" and completed household chores, such as "cooking, cleaning, and doing the

laundry." (*Id.* at 48) Dr. Acenas tested Plaintiff's memory and concentration and found Plaintiff "was able to remember 1/3 objects in three minutes" and spell the word "world" both forward and backward. (*Id.* at 49-50) In addition, Plaintiff "was able to do serial 3s" when Dr. Acenas tested her ability to calculate. (*Id.* at 49) Dr. Acenas concluded Plaintiff had "the ability to perform simple and repetitive tasks." (*Id.* at 50) Further, she opined Plaintiff could "perform work activities on a consistent basis,…maintain regular attendance, and finish a normal workweek." (*Id.*) Dr. Acenas believed Plaintiff's "ability to deal with the usual stress encountered in [a] competitive workplace [was] not impaired. (*Id.*)

Dr. Roger Wagner performed an internal medicine evaluation on September 10, 2013. (Doc. 10-9 at 54) He noted Plaintiff's complaints included hypertension and pain in her left hip, low back, and right thumb. (*Id.*) Plaintiff told Dr. Wagner she could "walk one or two blocks maximum," and she "avoid[ed] stairs if at all possible." (*Id.*) In addition, Plaintiff believed she could "sit for 15-20 minutes." (*Id.*) Plaintiff said her pain in the right thumb was "worse with gripping or writing." (*Id.*) Dr. Wagner observed:

> The claimant was easily able to get up out of her chair in the waiting room, walk at a normal speed back up to the exam room without assistance. She sat reasonably comfortably, but is noted to lean somewhat to the right side when sitting. She was easily able to bend over at the waist and take off [her] shoes. She was easily able to get on and off the exam table.

(*Id.* at 55) Plaintiff also "was able to walk on toes and heals, but noticed some foot pain walking on toes." (*Id.*) Dr. Wagner found Plaintiff had a negative straight leg raising test in the seated position but positive in the supine position on the left side. (*Id.* at 57) Dr. Wagner noted Plaintiff had "some mild tenderness of the metacarpophalangeal, carpometacarpal, and snuffbox areas," as well as a "slight positive Finkelstein's [test]." (*Id.*) He found Plaintiff had "good dexterity" and she was "easily able to oppose fingertips to thumb tips and pick up a paperclip off the table." (*Id.*) Further, Dr. Wagner found Plaintiff's "grip strength" was "5/5" with her hands, though her strength was "5/5" in her arms and legs. (*Id.*) Dr. Wagner noted Plaintiff's blood pressure was 151/85 and opined it was "poorly controlled" though Plaintiff had "no history of … end-organ damage." (*Id.* at 55, 57) Dr. Wagner concluded Plaintiff could stand and walk up to six hours in a day, sit up to six hours, and perform any postural activities frequently. (*Id.* at 58) He also opined Plaintiff could lift and carry 25 pounds

occasionally and 50 pounds frequently but should be limited to handling items with her right hand "no more than frequently." (*Id.*)

Dr. Joan Bradus reviewed the record on September 25, 2013 and noted Plaintiff had "good [range of motion] and normal gait, neuro findings." (Doc. 10-4 at 17, 20) In addition, she noted Plaintiff had "minimal findings" with regard to her hip and thumb pain. (*Id.*) Dr. Bradus found no history of "end organ damage" related to Plaintiff's hypertension. (*Id.*) She concluded Plaintiff could perform medium exertion work, including lifting and carrying 25 pounds frequently and 50 pounds occasionally. (*Id.*) Dr. Bradus opined Plaintiff could stand and/or walk "[a]bout 6 hours in an 8-hour workday; sit "[a]bout 6 hours in an 8-hour workday;" and frequently perform postural activities such as climbing, stooping, kneeling, crouching, and crawling. (*Id.* at 20-21) She believed Plaintiff had manipulative limitations with her right hand, and should be limited to "frequent fine and gross manipulation." (*Id.* at 22)

In November 2013, Plaintiff saw Dr. Hundal and reported she "continue[d] to have lower back and left hip pain." (Doc. 10-9 at 18, 77) In addition, Plaintiff described "epigastric area discomfort especially with bending," and said she wanted to have a mass removed that "was placed during her hiatal hernia repair in 2001." (*Id.*) Dr. Hundal noted Plaintiff said her mood had "been depressed," but she "denie[d] any hallucinations or delusions." (*Id.*) Dr. Hundal found she was "oriented to person and time." (*Id.*) Dr. Hundal referred Plaintiff to a gastroenterologist for evaluation. (*Id.*)

Dr. A. Nasrabada reviewed the medical record and affirmed the findings of Dr. Bradus on February 12, 2014. (Doc. 10-4 at 35)

In March 2014, Plaintiff had "a new [patient] physical" at Practice Fusion with Hoaib Rashed, PA. (Doc. 10-9 at 65) She complained of having "low back pain, on and off," which she described as "5/10." (*Id.* at 64) Her blood pressure was 140/80, and her heart had a "[r]egular rate and rhythm," without murmurs or gallops. (*Id.* at 65-66) Plaintiff had a normal gait and intact senses in her legs. (*Id.* at 66) She was "[a]dvised to increase and maintain physical activity for physical and emotional health, as well as improvement of chronic illness." (*Id.*) In addition, Plaintiff had x-rays taken of her lumbar spine and sacrum, which showed "[m]ild facet sclerosis L4-21 without hypertrophy." (*Id.* at 67)

On April 2, 2014, Plaintiff returned to Practice Fusion and was treated by Swaranjit Singh Gill, NP. (Doc.10-9 at 67) Her blood pressure at the time of the encounter was 130/80. (*Id.*) She described her low back pain as constant, sharp, and "8/10." (*Id.*) Plaintiff said she had difficulty walking because she felt her knee was "going to go out." (*Id.*) She reported her pain had "gotten worse over the past year" and said she had hip pain that was "10/10." (*Id.*) Plaintiff had a decreased range of motion "with pain in flexion and rotation and extension," and a positive straight leg raise test on the right. (*Id.*) Further, she walked "with [an] antalgic gait due to evident back pain." (*Id.*) Later that month, Plaintiff underwent x-rays of her pelvis, which showed "moderate degenerative arthritic changes in both hips." (*Id.* at 69; *see also* Doc. 10-10 at 100)

On May 6, 2014, Plaintiff visited Practice Fusion and reported her blood pressure was high. (Doc. 10-9 at 71) Chia-Hui Lin, NP, noted that Plaintiff's blood pressure "was 190/120 and recheck was 140/100." (*Id.*) Plaintiff declined to take blood pressure medication in the clinic and said she would take her own medication when she went home. (*Id.*) Plaintiff was "[a]dvised to attempt weight loss" and "to increase and maintain physical activity." (*Id.* at 72)

Plaintiff underwent an MRI on her lumbar spine on October 3, 2014. (Doc. 10-10 at 51) Dr. Michael Klieger determined Plaintiff had "severe bilateral facet arthritis [at] L4-L5 and L5-S1." (*Id.*) In addition, he found an "[a]nnular bulge at L4-L5, causing mild mass effect upon the right L5 nerve root." (*Id.*)

In April 2015, Plaintiff had an initial examination with Dr. Kuldeep Sidhu, an orthopedist. (Doc. 10-9 at 88) She reported she "injured her right thumb about 3 years ago," when a shelf hit her hand. (*Id.*) She told Dr. Sidhu that she had "pain and locking" following that injury. (*Id.*) Dr. Sidhu found Plaintiff had a "small lump over the tendon sheath with moderate triggering of the right thumb." (*Id.*) Plaintiff discussed treatment options with Dr. Sidhu and decided "to try injection." (*Id.* at 89)

**B.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial activity after the amended onset disability date of May 29, 2011. (Doc. 10-3 at 22) Second, the ALJ found Plaintiff's severe impairments included: "arthritis of the lumbar spine with annular bulge at L4-5, obesity, osteoarthritis (OA) of the bilateral hips, hypertension, osteoarthritis (OA) of the right hand,

affective disorder, and anxiety disorder." (*Id.*) These impairments did not meet or medically equal a listed impairment. (*Id.* at 22-23) Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except, the claimant could never climb ladders, ropes, and scaffolds. She could perform all other postural activities on a frequent basis. The claimant is limited to frequent handling, that is gross manipulation, with the right hand. The claimant is limited to occasional fingering, that is fine manipulation of items no smaller than the size of a paper clip, with the right hand. The claimant must avoid concentrated exposure to extreme cold, wetness, humidity, use of hazardous machinery, and unprotected heights. The claimant is limited to simple work, as defined in the Dictionary of Occupational Titles (DOT) as SVP levels one and two, routine, and repetitive tasks. The claimant must work in a low stress job, defined as having only occasional decision making and occasional changes in the work setting.

(*Id.* at 25) With this residual functional capacity, the ALJ found Plaintiff was "unable to perform any past relevant work." (*Id.* at 32) However, the ALJ determined there were "jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 33-34)

## **DISCUSSION AND ANALYSIS**

Plaintiff argues that the ALJ erred in evaluating an opinion offered by Dr. Hundal, her treating physician. (Doc. 14 at 8-12) According to Plaintiff, "The ALJ failed to provide clear and convincing reasons for rejecting the treating source opinion." (*Id.* at 13, emphasis omitted) On the other hand, Defendant contends, "the ALJ evaluated all the opinions consistent with the regulations and case law, and substantial evidence supports her findings." (Doc. 15 at 9)

**A.    Waiver**

Defendant asserts that in the appeal of the decision to deny benefits, "Plaintiff does not challenge the ALJ's finding that her symptom testimony is not fully credible." (Doc. 15 at 9) In response, Plaintiff contends: "This assertion is doubly misleading because (1) the ALJ does not make a 'credibility' finding in a Social Security decision, but (2) instead makes a finding as to whether the testimony and opinion evidence is consistent with and supported by the record, a finding that Plaintiff's brief does nothing but challenge." (Doc. 16 at 2, emphasis omitted)

Significantly, however, an ALJ is required to make credibility determinations in each decision, to determine whether a claimant's subjective complaints should be credited. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). The Ninth Circuit explained, "To ensure that our review of

*the ALJ's credibility determination* is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Id.* (emphasis added). Thus, the Ninth Circuit identified a two-part test for an ALJ to complete in making credibility determinations. First, an ALJ must determine whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, when the objective medical evidence shows an underlying impairment, and there is no affirmative evidence of a claimant's malingering, an "adverse credibility finding must be based on clear and convincing reasons." *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

Plaintiff does not address the ALJ's findings regarding the credibility of her subjective complaints in her opening brief. Thus, any challenge to the ALJ's adverse credibility determination has been waived. *See Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (where a claimant failed to raise an argument in the opening brief, the Court deemed it waived); *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n. 8 (9th Cir.2009) ("arguments not raised by a party in an opening brief are waived") .

### B.     Evaluation of the Medical Record

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A physician's opinion is not binding on the ALJ and may be discounted whether another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an uncontradicted

opinion of a treating or examining medical professional only by identifying a "clear and convincing" reason. *Lester*, 81 F.3d at 831. In contrast, the ALJ may reject a contradicted opinion of a treating or examining professional based upon "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

Plaintiff contends the ALJ erred in evaluating the information from Dr. Hundal, who offered a conclusion that conflicted with the findings of Drs. Wagner, Bradus and Nasrabada. The ALJ indicated he afforded Dr. Hundal's conclusion, that the claimant is unable to work a regular eight-hour job, "little weight" because "it was not supported by the record or treatment received." (Doc. 10-3 at 31) Significantly, the Ninth Circuit has determined these are legally sufficient reasons to give less weight to the opinion of a treating physician. *See, e.g., Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 602-03 (9th Cir. 1999)

### 1. Ultimate issue of disability

As an initial matter, the Court notes that in Social Security cases, physicians offer two types of opinions: (1) medical, clinical opinions regarding the nature of a claimant's impairments and (2) opinions on a claimant's ability to perform work. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (in disability benefits case "physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work"); *see also Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).

A treating physician's opinion on the ultimate issue of disability is not entitled to controlling weight, because statements "by a medical source that [a claimant] is 'disabled' or 'unable to work'" "are not medical opinions" under the Regulations. 20 C.F.R. §§ 404.1527(e), 416.927(e). Rather, an ALJ "adjudicator is precluded from giving any special significance to the source; e.g., giving a treating source's opinion controlling weight" when it is on an issue reserved to the Commissioner, such as the ultimate issue of disability. Social Security Ruling (SSR) 96-5p[2], 1996 WL 374183 at *3, (July 2,

---

[2] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Ninth Circuit gives the rulings

11

1996); *Martinez v. Astrue*, 261 Fed. App'x 33, 35 (9th Cir. 2007) ("the opinion that [a claimant] is unable to work is not a medical opinion, but is an opinion about an issue reserved to the Commissioner. It is therefore not accorded the weight of a medical opinion.").

The only challenged statement by Dr. Hundal was that Plaintiff was "unable to work [a] regular 8 hour[] job because of [her]… conditions," which included depression and osteoarthritis of the lumbar spine and left hip. (*See* Doc. 14 at 8; Doc. 10-9 at 78) Clearly, this is a statement "that would direct the determination or decision of disability." *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); *Martinez*, 261 Fed. App'x at 35. Therefore, the ALJ was entitled to give little weight to the conclusion of Dr. Hundal for this reason alone. *See* SSR 96-5p, 1996 WL 374183 at *3; *see also James v. Astrue,* 2012 U.S. Dist. LEXIS 139929 at * 25 (E.D. Cal. Sept. 27, 2012) ("an ALJ is not obligated to provide detailed reasons for rejecting a medical expert's opinion regarding the ultimate question of disability")

2. Treatment received

An ALJ may reject the opinion of a treating physician who prescribed conservative treatment, yet opines that a claimant suffers disabling conditions. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *see also Warre v. Comm'r of the Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits").

The ALJ noted Plaintiff received "conservative treatment" for her "lumbar impairments and OA of the bilateral hips." (Doc. 10-3 at 29, 30) Further, the ALJ found "no evidence of the claimant seeking physical therapy or receiving injections" for these conditions. (*Id.* at 29) Plaintiff does not dispute these findings, and the record supports a determination that she received only conservative treatment for her lumbar spine and hips. Therefore, this was a proper consideration for the ALJ in her decision to give little weight to the conclusion of Dr. Hundal that Plaintiff's osteoarthritis was disabling.

3. Inconsistency with the record

The Ninth Circuit determined the opinion of a physician may be rejected where an ALJ finds

---

deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

incongruity between a doctor's assessment and his own medical records, and the ALJ explains why the opinion "did not mesh with [his] objective data or history." *Tommasetti,* 533 F.3d at 1041. Similarly, inconsistency with the overall record constitutes a legitimate reason for discounting a physician's opinion. *Morgan*, 169 F.3d at 602-03; *Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits"). To reject an opinion as inconsistent with the treatment notes or medical record, the "ALJ must do more than offer [her] conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Id.*, 849 F.2d at 421-22.

The ALJ observed that "an x-ray performed on the claimant's right hand in February of 2015 reflected findings of only mild degenerative changes." (Doc. 10-3 at 30, citing Exh. 13F, p. 40 [Doc. 10-10 at 94]) Further, the ALJ noted that at the consultative examination, Plaintiff had "good dexterity and she was easily able to oppose fingertips to thump tips and pick up a paperclip off a table." (*Id.* at 27, citing Exh. 4, p.4 [Doc. 10-9 at 57])

In addition, the ALJ noted: "regarding the claimant's hypertension, there is no evidence of end organ damage, and the claimant's blood pressure readings were often within normal limits or slightly elevated." (*Id.*, citing Exh. 1 F, p. 27 [Doc. 10-9 at 28] 6F, p.2 [Doc. 10-9 at 65]; 13F, p.2 [Doc. Doc. 10-10 at 56]) Further, the ALJ identified findings related to Plaintiff's depression and anxiety, noting that despite her impairments, "at the consultative examination performed by Dr. Acenas, the claimant was able to perform serial threes and spell the word 'world' both forwards and backwards."[3] (Doc. 10-3 at 30, citing Exh. 3F, p.2 [Doc. 10-9 at 49]) Thus, the ALJ identified specific evidence conflicting with the conclusion that Plaintiff's depression, osteoarthritis of the right hand, and hypertension were disabling impairments.

Because the ALJ identified specific evidence with the record, the conflict with the medical record is specific and legitimate reason for giving less weight to the conclusion of Dr. Hundal. *See*

---

[3] As a result, Dr. Acenas concluded Plaintiff could "perform simple and repetitive tasks." (Doc. 10-9 at 50)

13

*Thommasetti,* 553 F.3d at 1041. The ALJ's resolution of the conflicting medical evidence must be upheld by the Court, even where there is "more than one rational interpretation of the evidence." *Allen,* 749 F.2d at 579*; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

**C.     Duty to Develop the Record**

In arguing that the ALJ erred in evaluating the medical record, Plaintiff also contends the ALJ "could have recontacted Dr. Hundal to explain any part of his confusing or seemingly inadequate opinion; requested an updated consultative examination to assess Plaintiff's current level of functioning and to actually review Plaintiff's medical file; sent the entire case record back to the State Agency for review by a medical consultant; or she could have sent the entire record to a medical expert for review and to testify at a hearing." (Doc. 14 at 19-20) Thus, Plaintiff seems to imply the ALJ had a duty to develop the record and erred in not doing so.

The law is well-established in the Ninth Circuit that the ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). The Ninth Circuit explained:

> The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented claimant. When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts ... The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests.

*Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id.*

However, the law imposes a duty on the ALJ to develop the record only in limited circumstances. 20 C.F.R § 416.912(d)-(f) (recognizing a duty on the agency to develop medical history, re-contact medical sources, and arrange a consultative examination if the evidence received is inadequate for a disability determination). Accordingly, the duty to develop the record is "triggered

14

only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2201); *see also Tonapetyan,* 242 F.3d at 1150 ("[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry").

Here, there were no conflicts or ambiguities to be resolved, nor did the ALJ find the record was insufficient to make a disability determination. Consequently, the ALJ's duty to develop the record was not triggered. *See Thomas v. Barnhart*, 278 F.3d 947, 978 (9th Cir. 2002) (duty not triggered when the ALJ did not conclude the medical report was inadequate to make a disability determination); *Mayes*, 267 F.3d at 459-60. Because the ALJ did not have a duty to develop the record, Plaintiff's assertion that the ALJ failed to develop the record by not contacting Dr. Hundal, calling a medical expert or sending Plaintiff to a second consultative examination is without merit.

### D.    Substantial Evidence Supports the ALJ's Decision

When an ALJ rejects the opinion of a physician, the ALJ must not only identify a specific and legitimate reason for rejecting the opinion but the decision must also be "supported by substantial evidence in the record." *Lester*, 81 F.3d at 830. Accordingly, because the ALJ articulated specific and legitimate reasons for rejecting the opinion of Dr. Hundal, the decision must be supported by substantial evidence in the record. Here, the ALJ gave "great weight" to the physical and mental limitations assessed by examining physicians Drs. Wagner and Acenas and non-examining physicians, Drs. Bradus and Nasrabada. (Doc. 10-3 at 29-30)

The term "substantial evidence" "describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the opinion need not prove by a preponderance that the opinion is wrong." SSR 96-2p, 1996 SSR LEXIS 9 at *8[4]. "It need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.*

---

[4] Social Security Rulings (SSR) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, the Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

### 1. Physical limitations

As noted by the ALJ, Dr. Wagner opined Plaintiff could perform medium work but was limited to performing postural activities on a frequent basis and frequent handling with the right hand. (Doc. 10-3 at 30; *see also* Doc. 10-9 at 58) The ALJ found these limitations were "consistent with his findings of the claimant upon examination" and "consistent with the evidence of record" due to the treatment Plaintiff received and imaging. (*Id.* at 30) Further, the ALJ determined that "Dr. Wagner's opinion [was] consistent with the claimant's reported activities of daily living." (*Id.*)

Dr. Wagner noted his functional assessment was "[b]ased on [his] objective findings" from the consultative examination. (Doc. 10-9 at 57) Importantly, when an examining physician's opinions "rest[] on independent examination," such findings are substantial evidence in support of an ALJ's decision. *Tonapetyan*, 242 F.3d at 1149; *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides independent clinical findings, such findings are substantial evidence). Thus, the opinion of Dr. Wagner is substantial evidence in support of the ALJ's physical residual functional capacity.

Further, the ALJ noted the "residual functional capacity assessment [was] supported by… the opinions of State agency medical consultants Dr. Bradus and Dr. Nasrabadi," which she gave "great weight." (Doc. 10-3 at 29, 31) The ALJ noted that "[b]oth consultants opined that the claimant could perform medium work" with postural and manipulative limitations. (*Id.* at 29) Because the findings of Drs. Bradus and Nasrabadi were consistent with the conclusion of Dr. Wagner—who also opined Plaintiff could perform medium work with postural and manipulative limitations— their opinions are substantial evidence support of the ALJ's decision. *See Tonapetyan*, 242 F.3d 1149 (the opinions of non-examining physicians "may constitute substantial evidence when . . . consistent with other independent evidence in the record").

### 2. Mental limitations

In finding Plaintiff could perform simple, routine, and repetitive tasks, with a limitation to "work in a low stress job," the ALJ gave great weight to the opinion of Dr. Acenas, an examining physician. (Doc. 10-3 at 29) Notably, Dr. Acenas tested Plaintiff's memory and ability to concentrate by having her attempt to recall three objects and spell the word "world" both forward and backwards.

(Doc. 10-9 at 48-50)

Such tests as those Dr. Acenas administered are commonly used by medical professionals to determine the effect of a claimant's alleged mental impairments. *See, e.g., Louis v. Astrue*, 2011 U.S. Dist. LEXIS 89834 at *17 (E.D. Cal. Aug. 12, 2011) (the consultative medical examiner noted the claimants "[m]emory recall was three of three words immediately and two of three words after five minutes"); *Randall v. Astrue*, 2012 U.S. Dist. LEXIS 105952, at *24 (E.D. Cal. July 20, 2012) (noting the claimant's "recent memory was impaired" where "she could remember one out of three objects after a few minutes"). Dr. Acenas concluded Plaintiff had "the ability to perform simple and repetitive tasks." (Doc. 10-9 at 50)

Because Dr. Acenas offered her functional assessment "[b]ased on [the] examination findings" (Doc. 10-9 at 50), her opinion was also substantial evidence in support of the ALJ's decision concerning Plaintiff's mental impairments. *See Tonapetyan*, 242 F.3d at 1149; *Orn,* 495 F.3d at 632.

## **CONCLUSION AND ORDER**

For the reasons set for above, the ALJ did not err in rejecting the conclusion of Dr. Hundal that Plaintiff was unable to work, and the residual functional capacity assessment was supported by substantial evidence in the record. Therefore, the Court must uphold the conclusion that Plaintiff was not disabled as defined by the Social Security Act. *Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Marilyn Scott Alvernaz.

IT IS SO ORDERED.

Dated: __March 12, 2018__       ___/s/ Jennifer L. Thurston___
                                UNITED STATES MAGISTRATE JUDGE